OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Richard Hord, appeals the decision of the Jefferson County Court of Common Pleas that affirmed the decision of the Unemployment Compensation Review Commission which found that Hord's employment with the JCCAC was terminated for just cause and denied his application for unemployment compensation benefits. Hord raises two issues on appeal.
 {¶ 2} First, Hord contends that the hearing officer denied his right to a fair hearing. However, the record shows that the hearing officer tried assisting Hord's examination of the witnesses and presentation of relevant evidence. Hord's problem at the hearing was that the argument he tried presenting was irrelevant to the issues before the hearing officer. Accordingly, his argument that the hearing officer erred is meritless.
 {¶ 3} Second, Hord claims that the Review Commission's decision that he was fired for just cause is unlawful, unreasonable, and against the manifest weight of the evidence, but he is incorrect. Contrary to Hord's arguments, the JCCAC did not need to follow a progressive disciplinary system before terminating him because it had not adopted one to deal with the type of actions in which Hord was engaged. Likewise, a previous letter from the JCCAC's Board did not establish a progressive disciplinary system. Instead, it clearly told him to stop engaging in a particular pattern of behavior or risk termination. Hord's arguments in this regard are also meritless.
 {¶ 4} For these reasons, the trial court's decision is affirmed.
 Facts {¶ 5} Hord was employed with the Jefferson County Community Action Council from October 1983 to January 2003, most recently as its Workforce Development Department Director. While he was acting as director of his department, Hord began to disapprove of how the JCCAC was being managed and began expressing his displeasure to his subordinates. Two of those subordinates filed formal complaints, which the JCCAC investigated. As a result of this investigation, the JCCAC's Board found that departmental morale was greatly suffering, that Hord was frequently criticizing the JCCAC's CEO, and that there had been a breakdown in communication. In a March 27, 2002, letter, the Board ordered that the department have a workshop on intrapersonal and group communications, that staff meetings be held once a month for three months so administrative personnel could receive feedback from the departmental staff, that Hord attend anger-management counseling, and that Hord be suspended without pay for fifteen days. The letter further stated that "any additional like behavior on Mr. Hord's part shall result in immediate
termination." Hord attended the required anger-management counseling and served his suspension, but the JCCAC never held a departmental workshop nor held monthly departmental meetings.
 {¶ 6} In January 2003, three of Hord's subordinates filed formal complaints against Hord with the JCCAC's Human Resources Department. According to those complaints, Hord forced his subordinates "to listen to numerous rants and raves" "almost on a daily basis" about the JCCAC administration, used foul and abusive language when discussing his superiors at the JCCAC, and accused a prior CEO of molesting minors. These employees all described the departmental morale as low and the department as a difficult place to work because of Hord's actions. The Human Resources director investigated the complaints and spoke with the JCCAC's CEO, Barbara West, who terminated Hord after discussing the issue with the Board on January 30, 2003.
 {¶ 7} Hord applied for unemployment benefits on February 3, 2003. His initial claim was allowed and the JCCAC requested a redetermination. The director again allowed Hord's claim, so the JCCAC appealed the director's redetermination to the Unemployment Compensation Review Commission. The case was assigned to a hearing officer, who held a hearing on October 28, 2003. On November 14, 2003, the hearing officer issued his decision, finding that Hord was terminated for just cause "for continuing patterns of disrespect and insubordination" which "got worse toward the end of his employment" even after he was warned to cease such activity in March 2002. Accordingly, the hearing officer reversed the director's redetermination and denied Hord's claim for benefits.
 {¶ 8} Hord appealed the hearing officer's decision to the Review Commission, which disallowed his request for review. Hord then appealed this decision to the Jefferson County Court of Common Pleas on February 18, 2004. After reviewing the Review Commission's decision, the trial court concluded that the decision was not unlawful, unreasonable, or against the manifest weight of the evidence because the evidence showed that Hord "criticized his subordinates and superiors, frequently used vulgar language and serious personal accusations that were apparently false and definitely irrelevant to the job at hand. These actions continued against written company policy despite warnings. It got to the point where some employees and superiors actually feared physical violence from [Hord]." The court also found that Hord had failed to show how he was prejudiced by the alleged due process violations.
 Due Process {¶ 9} In the first of two assignments of error, Hord argues:
 {¶ 10} "The Unemployment Compensation Review Commission violated O.A.C. 4146-7-02, and thus denied Plaintiff-Appellant's right to procedural due process."
 {¶ 11} Hord contends the hearing officer denied his right to due process in numerous ways by denying him the rights conferred upon him by statute and administrative regulation. Hord's arguments in this regard are meritless.
 {¶ 12} We begin by noting that the statutes and rules governing the procedure employed in reviewing an unemployment compensation claim are constitutional because they give an opportunity for a fair hearing before an impartial tribunal.Henize v. Giles (1986), 22 Ohio St.3d 213, 215. In order to successfully appeal a judgment on a procedural due process grounds, Hord must show that they have been prejudiced by the allegedly inadequate process unless the procedure employed involves such a probability that prejudice will result that it is deemed inherently lacking in due process. Estes v. Texas
(1965), 381 U.S. 532, 542-543; see also Smith v. Five RiversMetroParks (1999), 134 Ohio App.3d 754, 764 (Party could not get relief on procedural due process grounds because he could not point to any facts showing that he was unduly prejudiced by procedures employed.). In this case, Hord cannot show either that the procedure was not that mandated by statute or rule or that he was prejudiced by any alleged deficiency.
 {¶ 13} First, Hord contends that he was prejudiced by JCCAC's failure to send him copies of all the documents and written materials it intended for consideration by the hearing officer within fourteen days of filing its notice of appeal. According to Hord, OAC 4146-5-08 required that JCCAC send him those documents and any documents which were not properly sent to him could not be considered by the hearing officer. However, Hord's argument in this regard is frivolous. OAC 4146-5-08 only applies to "[d]ocuments to be considered in telephone hearings." In this case, the hearing was held in-person, not by telephone. Accordingly, the provisions of this OAC 4146-5-08 do not apply and the procedure used was that authorized by rule. Hord's arguments to the contrary are meritless.
 {¶ 14} Second, Hord maintains that the hearing officer improperly interfered with his cross-examination of witnesses. However, a review of the record demonstrates the opposite. During his cross-examination of the witnesses, Hord repeatedly began testifying and lost track of the fact that he was supposed to ask questions. The hearing officer repeatedly interrupted Hord in an attempt to refocus Hord on the task at hand, the cross-examination of the witness. Thus, the hearing officer told Hord, "[T]hat's not a question," "You weren't asking anything," "[T]here isn't a question you're asking," [D]o you have anything else to ask her," "[D]o you have anything to ask her about you," "What's your question," "Well, you got to go by procedure. I'm going to get to your testimony," "So what's your question," and "So do you have anything to ask her about you before I get to your testimony?"
 {¶ 15} Likewise, Hord accuses the hearing officer of preventing him from asking one witness about a document. However, a review of the record shows that Hord was beginning to argue about the document, rather than ask a question about the document. The hearing officer was trying to focus Hord and elicit a question from him, not dissuading him from asking a question.
 {¶ 16} Hord also argues the hearing officer discouraged him from presenting his evidence, but the record does not support this contention either. At one point, Hord was talking about some of the documentation in the case when he was cross-examining a witness when the following exchange took place:
 {¶ 17} "Hearing Officer: We know what the documents say.
 {¶ 18} Mr. Hord: Huh?
 {¶ 19} "Hearing Officer: What has been sent to us has been sent to us. So far you've — it has gone in your favor. So, you know, it's the employer's appeal.
 {¶ 20} "Mr. Hord: Uh-huh.
 {¶ 21} "Hearing Officer: So do you have anything to ask her about you before I get to your testimony?"
 {¶ 22} After this exchange, Hord asked the witness one more question before finishing his examination and testifying himself.
 {¶ 23} Once again, the hearing officer was trying to keep Hord focused on the task at hand, cross-examining the witness, rather than allowing him to testify himself at that point during the hearing. Furthermore, the hearing officer clearly intended that Hord testify, where he would be expected to introduce evidence and would have the opportunity to talk about the documents in the record. Thus, this portion of the record does not show that the hearing officer discouraged Hord from introducing evidence.
 {¶ 24} Third, Hord argues that his right to a fair hearing was violated since the hearing officer did not allow one of the witnesses he subpoenaed to testify. Hord subpoenaed Richard Gualtiere, a co-worker who filed a complaint against Hord with the JCCAC, to testify. According to Hord, he subpoenaed Gualtiere because "I thought we were getting along very well, very fine. He made very many negative comments as did I. I took him along to different meetings and so on. I thought we were a team, is what I'm saying." The hearing officer refused to allow Gualtiere to testify.
 {¶ 25} Hord's statements at the hearing show that he subpoenaed Gualtiere to testify because Gualtiere had allegedly engaged in the same type of conduct and Hord felt betrayed by someone that he apparently believed was a confidant. These are not reasons to have someone testify. Since hearing officers have broad discretion in conducting the hearing and accepting and rejecting evidence, the hearing officer did not abuse his discretion after hearing Hord's proffer. Owens v. Ohio Bur. OfEmp. Serv. (1999), 135 Ohio App.3d 217, 220. Hord's attempt to prove that other employees acted badly is merely a justification for his actions, and not proof that the JCCAC did not have just cause to terminate him.
 {¶ 26} R.C. 4141.29(D)(2)(a) prohibits the payment of unemployment compensation if the employee "has been discharged for just cause in connection with his work." "`[J]ust cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" Tzangas, Plakas Mannos v. Ohio Bur. of Emp.Serv. (1995), 73 Ohio St.3d 694, 697, quoting Irvine v. Unemp.Comp. Bd. of Review (1985), 19 Ohio St.3d 15, 17. Just cause, under the Unemployment Compensation Act, is not the same as just cause in other contexts; it is predicated upon employee fault. Id. at 698. Just cause determinations must be consistent with the legislative purpose of enabling unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level. Id. at 697. Accordingly, the employer's motivation or the correctness of the decision to discharge is irrelevant. Durganv. Ohio Bur. of Emp. Serv. (1996), 110 Ohio App.3d 545, 549.
 {¶ 27} Hord's argument that other employees engaged in similar conduct without facing similar consequences would be proper in an action for age discrimination since it would show that the JCCAC's position was merely pretextual. See Barker v.Scovill, Inc. (1983) 6 Ohio St.3d 146, paragraph one of the syllabus. Likewise, these types of facts could be used to show that he was wrongfully terminated in violation of public policy. See Collins v. Rizkana, 73 Ohio St.3d 65, 69-70, 1995-Ohio-0135. However, whether another employee engaged in similar conduct without being terminated does not have any relevance to whether he has become involuntarily unemployed because of adverse business and industrial conditions. An employee cannot be excused for his bad conduct for the purposes of unemployment compensation simply because other employees engage in the same conduct.
 {¶ 28} Finally, Hord contends that the hearing officer refused to allow Hord to present a full and fair defense to the JCCAC's allegations. But the full and fair defense Hord refers to is the irrelevant defense that other employees engaged in the same kinds of "bad acts" as Hord. But as stated above, this is an irrelevant issue in the unemployment compensation context. Accordingly, the hearing officer's decision to prevent Hord from introducing this evidence was not a due process violation.
 {¶ 29} It appears that Hord did not have a firm grasp on either the issues he needed to address at the hearing or the procedure that he had to follow at the hearing. The hearing officer was trying to assist Hord by focusing him on the task at hand and not allowing him to be distracted by irrelevant issues. Hord is now complaining about those actions, but his arguments are meritless.
 Just Cause Determination {¶ 30} In his second assignment of error, Hord argues:
 {¶ 31} "The Unemployment Compensation Review Commission's finding that Plaintiff-Appellant was discharged for just cause was unlawful, unreasonable and against the manifest weight of the evidence in that JCCAC failed to follow its own disciplinary policy and specific order dated March 27, 2002."
 {¶ 32} In this assignment of error, Hord contends that both the JCCAC's employee handbook and a letter to him from the JCCAC's Board described a system of progressive discipline that the JCCAC had to follow before terminating him. Thus, he believes the Review Commission's decision is unlawful, unreasonable and against the manifest weight of the evidence.
 {¶ 33} A claimant bears the burden of proving his entitlement to unemployment compensation benefits. Kosky v. Am. Gen. Corp.,
7th Dist. No. 03-BE-31, 2004-Ohio-1541, at ¶ 9. An unsatisfied claimant may appeal the commission's decision to the trial court. R.C. 4141.282(A). The trial court shall reverse, vacate, modify, or remand the commission's decision if it finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). If the court does not find that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, then the court shall affirm the decision. Id.
 {¶ 34} A party unsatisfied with the trial court's decision may appeal to the court of appeals. The appellate court, like the trial court, is limited to reviewing whether the decision is supported by evidence in the record. Tzangas, Plakas Mannos v.Ohio Bur. of Emp. Serv., 73 Ohio St.3d 694, 696, 1995-Ohio-0206, citing Irvine v. Unemp. Comp. Bd. of Review (1985),19 Ohio St.3d 15, 18. This court can only reverse a "just cause" determination by the commission if it is unlawful, unreasonable, or against the manifest weight of the evidence. Id. at paragraph one of the syllabus.
 {¶ 35} In this case, the evidence appears to support the Commission's decision. In a March 2002 letter from the JCCAC's Board, Hord was disciplined after two of his subordinates filed formal complaints against him. His actions lowered departmental morale, interfered with his subordinate's ability to work, and violated company policy. The JCCAC suspended Hord for fifteen days, ordered that he receive anger management counseling, and warned Hord not to engage in such conduct in the future or risk being terminated. After this warning, Hord continued to engage in he same type of conduct. Accordingly, the JCCAC terminated him. These facts indicate that Hord was terminated for just cause.
 {¶ 36} Hord argues that he could not be terminated for just cause despite these facts since the JCCAC did not either follow the progressive disciplinary system it established in its employee handbook or implement all the measures it ordered in the March 2002 letter. Citing cases dealing with a company's failure to follow its progressive disciplinary system, like Mullen v.Administrator, O.B.E.S. (Jan 16, 1986), 8th Dist. No. 49891, Hord contends that these documents created expectations upon which he relied and that it would be fundamentally unfair to conclude that he was fired for just cause when he relied on those expectations. Hord's arguments are meritless.
 {¶ 37} Contrary to Hord's arguments, the JCCAC's employee handbook does not create a general system of progressive discipline. When describing the "Employee Code of Conduct," the handbook states that the JCCAC can impose discipline "up to and including discharge" for certain conduct, including "[u]sing foul and abusive language" and "[m]aking false, vicious, or malicious statements regarding the Agency, its employees, management, product or services." But the handbook does not describe what disciplinary steps the JCCAC must implement before terminating an employee. Furthermore, the handbook specifically states that certain violations, such as "[m]aking false, vicious, or malicious statements regarding the Agency, its employees, management, product or services," could "result in immediate dismissal."
 {¶ 38} In contrast to its failure to implement a general progressive disciplinary system for all violations of company policy, the handbook creates such a system for tardiness. That system describes a progressive series of punishments, a verbal warning, then a written warning, and eventual termination, for repeated tardiness. However, this is irrelevant in this case since Hord was not terminated for tardiness. Thus, Hord's argument that the JCCAC failed to follow the procedures outlined in its employee handbook is meritless.
 {¶ 39} Hord also argues that the JCCAC did not follow the procedure its Board outlined in the March 2002 letter suspending him. Hord claims that this letter shows that the JCCAC could not terminate him because not all of the remedial measures which the Board ordered to take place were actually implemented. For instance, the letter orders Hord to submit to anger management counseling and to serve a fifteen day suspension, both of which he completed. However, the letter also states that his department should conduct both a workshop regarding the aspects of interpersonal and group communication and staff meetings once a month which should be attended by administrative personnel. These measures were not completed. According to Hord, these measures were "progressive discipline" measures imposed upon him which must be met before he could be terminated. Hord's argument is meritless.
 {¶ 40} First, the Board's order that Hord's department have a workshop and conduct staff meetings is not a form of discipline imposed upon Hord. Instead, these are measures the Board wanted to implement to help prevent circumstances under which complaints would need to be filed again in the future. Since these measures are not punishing Hord, they cannot be used to support his argument that the JCCAC adopted a progressive disciplinary system in the letter.
 {¶ 41} Second, the letter specifically states that "any
additional like behavior on Mr. Hord's part shall result inimmediate termination." (Emphasis sic.). This is unambiguous. The Board clearly wanted Hord to stop engaging in disruptive, insubordinate behavior and if he did not, then he risked being terminated. Hord was clearly warned of the possible consequence of his behavior. This is not a case where an employee should have been surprised by his employer's decision to fire him.
 {¶ 42} The Review Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence. The facts support its decision that Hord was terminated for just cause. Accordingly, Hord's second assignment of error is meritless.
 Conclusion {¶ 43} Each of Hord's assignments of error is meritless. Hord contends that he was denied his right to a fair and impartial hearing, but the record shows that the hearing officer generally tried assisting Hord in his examination of the witnesses. Furthermore, Hord was not prejudiced by the hearing officer's actions since the defense Hord was trying to present is irrelevant to the just cause determination. Finally, the Review Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.