[Cite as *Coles v. United Parcel Serv.*, 2013-Ohio-1428.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JEFFREY COLES, | ) | |
| | ) | CASE NO. 12 MA 22 |
| APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| UNITED PARCEL SERVICE, et al., | ) | |
| | ) | |
| APPELLEE. | ) | |


CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas
                                   Court, Case No. 11 CV 65.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Appellant:                     Attorney Jacqueline Coles-Jones
                                   8597 Squirrel Hill N.E.
                                   Warren, OH  44484


For Appellee:                      Mike DeWine
                                   Ohio Attorney General
                                   Susan Sheffield
                                   Asst. Attorney General
                                   Health & Human Services Section
                                   Unemployment Compensation Unit
                                   20 W. Federal Street, 3rd Floor
                                   Youngstown, OH  44503


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                   Dated: March 25, 2013

DeGenaro, P.J.

{¶1} Plaintiff-Appellant Jeffery D. Coles appeals the January 10, 2012 judgment of the trial court affirming the denial of his unemployment compensation benefits. Coles, who was a package delivery driver for Appellee United Parcel Service, Inc. was terminated from his employment following two off-duty OVI arrests. Coles argues that the Review Commission erroneously concluded that he was terminated for cause. Coles' assignment of error is meritless. The Review Commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Coles was hired by UPS in 1996 as a truck pre-loader and eventually became a package car driver approximately six to seven years later. Coles' employment rights were governed by a Collective Bargaining Agreement between UPS and the Teamsters Union. The CBA provided that employees would have a "one (1) time rehabilitation opportunity for alcohol abuse as outlined in Article 16, Section 5. Article 16, Section 5 of the CBA stated that "an employee shall be permitted to take a leave of absence for the purpose of undergoing treatment in an approved program for alcoholism or substance abuse."

{¶3} In November 2006, Coles was arrested for an off-duty OVI offense. He notified UPS, and pursuant to evaluation by an approved independent substance abuse professional, Coles took a rehabilitation leave of absence so that he could attend six educational classes. Before returning to work, he signed an agreement entitled UPS/IBT Alcohol and/or Drug Rehabilitation Agreement," which was developed by UPS and the Union. Therein, Coles agreed to abstain from further alcohol use.

{¶4} On January 23, 2010, Coles was again arrested for an off-duty OVI offense, he reported the arrest to UPS and was suspended from work. An approved independent substance abuse professional evaluated Coles on February 3, 2010 and recommended Coles take part in an intensive outpatient therapy program for alcoholism, seven days per week for six weeks. Because Coles had already exhausted his one-time rehabilitation leave, he was terminated from employment with UPS on February 5, 2010. Coles subsequently grieved his termination, but it was upheld by a joint labor-management

committee.

{¶5}   In the meantime, Coles filed an application for unemployment compensation benefits arising from his termination.  On March 4, 2010, Appellee, Director of Ohio Department of Job and Family Services issued an initial determination, concluding that Coles had been discharged from employment without just cause, and thus allowing his claim for benefits.  UPS filed a timely appeal and in a redetermination decision the Director affirmed the decision allowing benefits.  UPS next appealed the redetermination and on May 13, 2010, the Director transferred jurisdiction to the Unemployment Compensation Review Commission pursuant to R.C. 4141.281(B).

{¶6}   On October 19, 2010 a telephonic evidentiary hearing was conducted by a Review Commission hearing officer.  The Director presented the testimony of Stacey Craley, the manager at the UPS Mahoning Valley Building where Coles worked.  She testified that Coles was terminated after two OVI arrests.  She testified that after the first arrest, he exhausted his one-time rehabilitation leave as provided for in the CBA.  Further, she testified that following his first OVI arrest and resulting leave of absence, Coles signed an agreement indicating he understood he had exhausted his one-time rehabilitation leave opportunity.

{¶7}   Coles testified that following his first OVI arrest, he took approximately a one-month leave of absence to take educational classes, as recommended by the approved substance abuse professional.  Coles also testified that aside from the OVI issues, he was a good employee.  It was his position that the first leave was for educational, not rehabilitative purposes.  As exhibits Coles presented, among other things, excerpts from the CBA and an affidavit from Linda Burke, a Certified Employee Assistant for another union, in which she gave her opinion as to the difference between alcohol treatment and educational classes.

{¶8}   In a decision mailed on November 3, 2010, the hearing officer reversed the Director's redetermination decision, concluding that Coles had been discharged by UPS for just cause in connection with his work. Coles timely requested further review by the Review Commission, which was denied.

{¶9} Coles timely appealed the Review Commission's decision to the Mahoning County Court of Common Pleas. On November 2, 2011, the magistrate issued a decision including findings of fact and conclusions of law, concluding that the Review Commission's decision was not unlawful, unreasonable or against the manifest weight of the evidence, and therefore affirmed the Review Commission's decision. Coles filed objections and after a hearing, the trial court conducted an independent review and adopted the magistrate's decision in full, without modification on January 10, 2012.

### Just Cause

{¶10} In his sole assignment of error, Coles asserts:

{¶11} "The decision of the commission is unlawful because the commission and the trial court failed to apply the governing law and appropriate legal standard."

{¶12} A claimant bears the burden of proving his entitlement to unemployment-compensation benefits. *Kosky v. Am. Gen. Corp.*, 7th Dist. No. 03-BE-31, 2004-Ohio-1541, at ¶9. An unsatisfied claimant may appeal the review commission's decision to the trial court. R.C. 4141.282(A). The trial court shall reverse, vacate, modify, or remand the commission's decision if it finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). If the court does not find that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, then the court shall affirm the decision. *Id.*

{¶13} Our standard of review is the same. *See Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696-697, 653 N.E.2d 1207 (1995). That is, the court of appeals must also determine whether the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. *Guy v. Steubenville*, 147 Ohio App.3d 142, 2002-Ohio-849, 768 N.E.2d 1243, ¶24 (7th Dist.).

{¶14} "None of the reviewing courts can reverse a commission decision as being against the manifest weight of the evidence when there is some evidence in the record to support the commission's decision. * * * When the commission could have reasonably decided a just-cause issue either way, the courts have no authority to overrule that decision." *Struthers v. Morell*, 164 Ohio App.3d 709, 2005-Ohio-6594, 843 N.E.2d 1231,

¶14 (7th Dist.), citing *Irvine v. Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 16, 482 N.E.2d 587 (1985).

**{¶15}** R.C. 4141.29(D)(2)(a) provides that an individual is ineligible for unemployment benefits if he was "discharged for just cause in connection with the individual's work." The Ohio Supreme Court has defined "just cause" as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine* at 17; *Tzangas*, at 697. "Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act." *Tzangas* at 697. "The act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." *Id.*, quoting *Irvine* at 17.

**{¶16}** "[T]he question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause." *Tzangas* at 698, citing *Irvine.* " 'The critical issue is not whether an employee has technically violated some company rule, but * * * whether the employee, by his actions, [has] demonstrated an unreasonable disregard for his employer's best interests.' " *Astro Shapes, Inc. v. Sevi*, 7th Dist. No. 09 MA 105, 2010-Ohio-750, ¶34, quoting *Manor West Health Care & Ret. Ctr. v. Ohio Bur. of Emp. Serv.*, 7th Dist. No. 93CA95, 1994 WL 718785 (Dec. 23, 1994).

**{¶17}** Coles argues that the administrative and trial court decisions were unlawful for two main reasons. First, he asserts that UPS bypassed the mandatory discipline procedures in the CBA when terminating him and that therefore he was terminated without just cause. He claims that since the first leave was for alcohol education classes, it should not have counted towards his one-time rehabilitation leave under the CBA.

**{¶18}** Coles cites a number of cases holding that where an employer "bypasses its progressive disciplinary system and terminates an employee that employee's discharge is without cause for unemployment compensation purposes." *Peterson v. Director,* 4th Dist.

No. 03CA2738, 2004-Ohio-2030, ¶20, citing *In re Claim of Frazee*, 10th Dist. No. 84AP-284 (Dec. 13, 1984).  Coles notes that in these and the other progressive discipline cases he relies on, the focus is not on employee culpability, but rather on whether the employer followed its stated progressive disciplinary policy.

**{¶19}** For example, in *Mullen*, the claimant was discharged because her disruptive attitude adversely affected her job performance and her relationship with her fellow employees.  *Id.* at *3.  Under the employer's disciplinary system, three written warnings were required before an employee could be dismissed.  In Mullen's case the employer only issued one written warning prior to her discharge.  Because the employer failed to comply with its mandatory progressive disciplinary procedure, the Eighth District concluded the employee was terminated without just cause and therefore entitled to unemployment compensation benefits.  *Id.* at *5.

**{¶20}** Although a majority of appellate districts are uniform in their holdings regarding progressive discipline cases, the Seventh District has not yet squarely addressed the issue.  In *Hord v. Ohio Dept. of Job & Family Servs.*, 7th Dist. No. 05 JE 48, 2006-Ohio-4382, although *Mullen* was noted,  ultimately the panel determined that the employer's policy in *Hord* did not constitute a system of progressive discipline.  *Id.* at ¶36.

**{¶21}** Further, the policy at issue in this case cannot be categorized as a progressive discipline policy; it simply gives the employee a one-time rehabilitation leave opportunity for drug and alcohol abuse.  From the portions of the CBA that are a part of the record, UPS and the Union created a one-step system of discipline for off-duty impaired driving situations; a second incident results in termination.  *Compare Hord v. Ohio Dept. of Job & Family Servs.*, 7th Dist. No. 05 JE 48, 2006-Ohio-4382, ¶36-37 (concluding there was no progressive discipline policy in place where the employee handbook did not describe what disciplinary steps the employer must implement before terminating an employee.)  Thus, the line of progressive discipline cases from our sister districts cited by Cole are inapplicable.

**{¶22}** More importantly, regardless of whether we categorize the leave policy herein as a progressive discipline policy or not, UPS followed its policy.  The policy

permitted a one-time rehabilitation leave for alcoholism or substance abuse. In 2006, after Coles' first OVI arrest, he was evaluated by a substance abuse professional and directed to take alcohol abuse classes, necessitating a month-long leave of absence from his job. The record demonstrates that the parties intended this to be a rehabilitative leave. Accordingly, after his second arrest for OVI, and upon recommendation from another substance abuse professional that Coles attend daily intensive outpatient therapy for six weeks, Coles was no longer eligible for a rehabilitation leave and was properly terminated.

{¶23} Nonetheless, Coles claims that since the first leave was for alcohol education classes, it should not have counted towards his one-time rehabilitation leave under the CBA. He points to another CBA provision to support his argument that a distinction must be made between a leave for alcohol education classes and one for stronger rehabilitative efforts, such as an intensive outpatient program. Specifically, in defining the role of a "Substance Abuse Professional," the CBA states: "The SAP is responsible for performing the following functions * * *2. Referring the employee to an appropriate education and/or treatment program[.]" Coles claims that because this provision of the CBA makes a distinction between education and treatment, there must also be a distinction between leaves for these purposes.

{¶24} However, the pertinent provision of the CBA provides employees will have a "one (1) time rehabilitation opportunity for alcohol abuse," meaning the employee will "be permitted to take a leave of absence for the purpose of undergoing treatment in an approved program for alcoholism or substance abuse." It does not differentiate between different types of treatment, e.g., educational classes, intensive outpatient, inpatient, etc. Accordingly, Coles' argument that UPS failed to follow its mandatory discipline policy is meritless.

{¶25} Second, Coles asserts that the rehabilitation agreement he signed following his first leave (in which he agreed to abstain from further alcohol use), was unenforceable and violated the terms of the CBA. The agreement, titled "UPS/IBT Alcohol and/or Drug Rehabilitation Agreement," was developed by UPS and the Union. The determination of whether this provision is enforceable under the CBA is more appropriately resolved via

grievance proceedings before the labor-management committee. "The labor-management committee's focus is whether contractual rights under the collective bargaining agreement have been breached, and its decision is binding upon the parties for purposes of the collective bargaining agreement. In contrast, the function of ODJFS is to determine whether unemployment compensation benefits should be granted under R.C. Chapter 4141, not whether a contract has been breached." *Anderson v. Interface Electric, Inc.*, 10th Dist. No. 03AP-354, 2003-Ohio-7031, ¶22, citing *Wilson v. Matlock, Inc.*, 141 Ohio App.3d 95, 101, 750 N.E.2d 170 (2000).

{¶26} Even if the agreement was unenforceable with regard to Coles' promise to abstain from alcohol; it still demonstrates Coles was aware that he was taking a rehabilitative leave following his first OVI arrest. UPS manager Stacey Crowley testified that when Coles took his first leave and signed that agreement he demonstrated his knowledge that he would be using his rehabilitative leave. Crowley testified: "[t]hat was his form of rehabilitation. He understood that when he signed the form." Despite that knowledge, Coles was again arrested for OVI. As the Director asserts, Coles unreasonably disregarded the employer's best interests in continuing to abuse alcohol and being arrested a second time for OVI. Accordingly, the Review Commission correctly determined that Coles was discharged with just cause.

{¶27} In sum, Coles' sole assignment of error is meritless. The Review Commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence; UPS followed the disciplinary procedure in the CBA and Coles was discharged with just cause. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.