[Cite as *Reid v. MetroHealth Sys., Inc.*, 2017-Ohio-1154.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104015**

## ROBERT REID

PLAINTIFF-APPELLANT

vs.

## METROHEALTH SYSTEMS, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-843359

**BEFORE:** Keough, A.J., McCormack, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 30, 2017

**ATTORNEY FOR APPELLANT**

Orlando E. Smith
3922 East 149th Street
Cleveland, Ohio 44128


**ATTORNEYS FOR APPELLEES**

**For MetroHealth Sytems, Inc.**

Marlene L. Franklin
Emily C. Fiftal
MetroHealth Medical Center
2500 MetroHealth Drive
Cleveland, Ohio 44109

**For Director, Ohio Department of Job and Family Services**

Mike DeWine
Attorney General
By: Patrick MacQueeney
Assistant Attorney General
Ohio Attorney General's Office
615 West Superior Avenue, 11th Floor
Cleveland, Ohio 44113-1899

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Appellant, Robert Reid ("Reid"), appeals from the judgment of the common pleas court affirming the decision of the Unemployment Compensation Review Commission (the "Commission") that he was terminated from his employment at MetroHealth System ("MetroHealth") for just cause and therefore not entitled to unemployment benefits. We affirm.

## I. Facts and Procedural History

{¶2} Reid filed a claim for unemployment benefits with the Ohio Department of Job and Family Services (the "ODJFS"). The ODJFS allowed the claim without a hearing. MetroHealth appealed the determination and on redetermination, ODJFS affirmed its decision, again without a hearing. MetroHealth appealed the redetermination, and ODJFS transferred jurisdiction of the appeal to the Commission for an evidentiary hearing pursuant to R.C. 4141.281. The hearing took place on September 15, 2014, and October 28, 2014.

{¶3} Prior to the September hearing, Reid requested that the hearing officer issue subpoenas to MetroHealth requesting documentary evidence and the appearance at the hearing of various MetroHealth employees. Reid's request totaled seven single-spaced pages. The hearing officer did not issue all of Reid's requested subpoenas, but on September 10, 2014, he issued a broad subpoena ordering MetroHealth to produce "all documents that relate or pertain to claimant and/or that contain information about claimant including job performance, corrective action and/or discipline and claimant's

record of employment with MetroHealth." In response, on October 21, 2014, MetroHealth produced 170 pages of documents to Reid and the Commission. The documents included Reid's personnel file, a corrective action report issued to Reid, notes of weekly meetings Reid had with his supervisor after he received a written warning, and the final disciplinary report discharging Reid.

{¶4} Reid testified at the hearing, as did his supervisor, Simpson Huggins ("Huggins"), and Alexander Tedosio, MetroHealth's Labor Relations Director.

{¶5} Tedosio testified that Reid was employed by MetroHealth as a senior internal auditor from November 11, 2013, until he was discharged on June 16, 2014, for inadequate job performance and conduct issues that violated MetroHealth's disciplinary policy contained in the employee handbook. Tedosio said that Reid was made aware of the policy at his orientation and again when he was given a written warning on April 8, 2014, and put on a performance improvement plan.

{¶6} Tedosio testified that Reid received a 45-day evaluation of his performance in December 2013, and the review indicated that he was performing satisfactorily. Reid also received a 90-day evaluation in February 2014. This evaluation indicated that Reid was performing satisfactorily but needed to improve his efficiency in completing assigned audits.

{¶7} Tedosio said that Huggins met with him before April 8, 2014, and reviewed numerous complaints he had received about Reid from various MetroHealth employees. Huggins then asked what the appropriate action would be regarding someone in Reid's

position. Tedosio recommended a written corrective action report; in short, a written warning.

**{¶8}** On April 8, 2014, Huggins met with Reid and gave him the written corrective action report. The report stated that Reid had engaged in disorderly conduct, such as verbal altercations with other employees, and willful conduct that interfered with the effective operations of MetroHealth; that he had failed to meet the standards of the job; and that he had failed to follow his supervisor's instructions and complete his job assignments, all in violation of specific sections of the employee handbook. Huggins summarized Reid's policy violations as follows:

> On numerous accounts during the past four months, I have commented verbally to Robert on how he should communicate with MHS personnel regarding audit matters. These communications were based on auditees commenting directly to me about his demeanor, approach, and lack of respect. As a result, attached is a summary of occurrences that outline the policy violations noted above.

**{¶9}** The four-page summary identified various incidents where MetroHealth employees had complained to Huggins about Reid's statements to them or treatment of them while he was conducting audits in their departments. The summary also found that Reid had submitted audit reports that were not of the quality and standards expected of a senior internal auditor. The summary noted further that when he was hired, Reid told Huggins that he had IT auditing skills, but when he was assigned to develop an IT audit program, he submitted a program based upon a previous employer's program rather than a program tailored to MetroHealth.

{¶10} The corrective action report instructed Reid to immediately improve his behavior by showing respect to other MetroHealth employees, and improve his performance and time management skills by timely completing his audit assignments. The report stated that Reid had six weeks in which to improve his verbal and written communication skills, interpersonal skills, focus, and critical thinking. The report indicated that during those six weeks, Reid would have weekly one-on-one meetings with Huggins to discuss his performance and the progress of his assigned projects.

{¶11} On April 8, 2014, Reid provided a written response to the warning to MetroHealth's Human Resources Department. In his response, Reid addressed each incident identified in Huggins's summary. He specifically stated "I accept responsibility" with regard to each incident and identified the future corrective actions he would take, including not interrupting inventory processes, seeking an effective communications course, not becoming argumentative with other employees, not expanding an audit scope without conferring with his supervisor, and writing in a clear and concise manner.

{¶12} Huggins testified that prior to April 8, 2014, he had met with Reid each time there was a complaint or a question about his auditing skills. He testified that he rated Reid "satisfactory" at his 45-day review because his audit work was just beginning, and although he still rated him "satisfactory" at the 90-day review, he made comments about what Reid needed to improve.

**{¶13}** He testified further that he met weekly with Reid after April 8, 2014, and that even though he gave Reid more counseling than he gave any other employee, Reid simply could not do the work of a senior internal auditor. Huggins testified that he even took some projects away from Reid to allow him to improve his work on his other projects, but Reid's work did not improve.

**{¶14}** Huggins testified that when he was hired, Reid said he was an IT auditor, so in March 2014, Huggins assigned Reid IT audit work under the close supervision of the IT auditor. Huggins testified that Reid could not even perform the basic functions of the audit, however. Huggins testified that one day he asked Reid whether he had the skills to be an IT auditor. The next day, Reid told Huggins that "it was better to be humble and admit your faults," and that although he had wanted to try IT auditing, he did not have the skills to perform IT audits. Huggins testified that because Reid could not perform the IT and internal audits he had been hired to conduct, Huggins had to use third-party consultants to perform audits, at an additional expense to MetroHealth.

**{¶15}** Huggins testified that he gave Reid an assignment to develop an audit program within the revenue cycle department. He said that although normally it takes a day or two to develop the program, Reid took two weeks and, although he eventually gave Huggins an audit program, Huggins could not use it, and the program later had to be redone by a third party. According to Huggins, Reid was never able to successfully complete a multi-faceted audit as he had been hired to do.

**{¶16}** Huggins testified that although the corrective action plan initially called for six weeks of one-on-one meetings, he still met with Reid weekly after the six weeks were over because he wanted Reid to succeed. Huggins testified, however, that during the two months he met with Reid, Reid's weekly status reports never changed; he submitted the same plans with the same "progress notes which were showing that there was nothing new that he was working on." Huggins testified that he made notes regarding his discussions with Reid during the weekly meetings; the notes were provided by MetroHealth in response to the subpoena.

**{¶17}** On June 16, 2014, MetroHealth terminated Reid's employment. The discharge notice stated that during the two months since the written corrective action report, Reid had demonstrated that he lacked the technical skills and independent critical thinking needed to perform the duties of a senior internal auditor, and that his performance of even basic tasks was extremely deficient. The discharge notice also stated that Reid had been advised when he was hired that IT audits would comprise at least 50 percent of his work, but he lacked the skills to perform IT audits, a deficiency that Reid had admitted.

**{¶18}** Reid testified, however, that he did not recall whether IT audits had been discussed when he was hired, and that he could perform IT audits even though MetroHealth never gave him an opportunity to do an IT audit. Reid admitted that he drew up a general IT plan but denied that he used a plan from a prior employer. He also denied telling Huggins that he could not do IT audits.

**{¶19}** Reid testified that the first time he learned there were issues with his performance was on April 8, 2014, when he received the written corrective action report. He denied that Huggins had ever spoken with him prior to that day about any of the issues identified in the corrective action report. Reid admitted that he sent Huggins a written response to the corrective action report in which he accepted responsibility for his actions, but said he accepted responsibility "for something that didn't happen" because he wanted to keep his job. Reid said he did not admit in his written response that any of the incidents "actually happened."

**{¶20}** Reid agreed that he started meeting weekly with Huggins after the April 8, 2014 corrective action report, but testified that he "was totally blindsided" on June 16, 2014, when he was discharged, because he "had no indication" he had any performance issues. Reid denied that Huggins ever took any assignments away from him or commented on the timeliness of the completion of his assignments. He testified further that he completed all of his assignments except for the ones that were still pending when he was discharged.

**{¶21}** The hearing officer subsequently issued a written decision finding that Reid had been discharged for just cause in connection with work, and therefore disallowing his claim for unemployment compensation. Reid appealed the Commission's decision to the court of common pleas pursuant to R.C. 4141.282. The trial court affirmed the Commission's decision, finding that it was not unlawful, unreasonable, or against the manifest weight of the evidence. This appeal followed.

## II.     Law and Analysis

### A.     Standard of Review

**{¶22}** R.C. 4141.282 governs the standard of review for decisions by the Commission.   Under R.C. 4141.282(H), the common pleas court shall reverse the Commission's decision only if it finds "that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence."   Appellate courts are to apply the same standard of review as the trial court.   *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697, 653 N.E.2d 1207 (1995).[1]   Although appellate courts are not permitted to make factual findings or to determine the credibility of witnesses (that is the Commission's function), they must determine whether the Commission's decision is supported by the evidence in the record.   *Id*. at 696, citing *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17-18, 482 N.E.2d 587 (1985).

### B.     Failure to Issue Subpoenas

**{¶23}** Under R.C. 4141.281(C)(1), regarding administrative appeals, "[t]he commission shall provide an opportunity for a fair hearing to the interested parties of appeals over which the commission has jurisdiction." Under R.C. 4141.281(C)(2), "[t]he

---

[1]Unlike our review of other administrative appeals, where our review is limited to whether the trial court abused its discretion, there is no distinction between the scope of review of common pleas and appellate courts regarding just cause determinations under the unemployment compensation law. *Sinclair v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 101747, 2015-Ohio-1645, ¶ 6, citing *Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 551, 674 N.E.2d 1208 (9th Dist.1996).

principles of due process in administrative hearings shall be applied to all hearings conducted under the authority of the commission."

{¶24} Reid raises five assignments of error on appeal. In four of them, he takes issue with the hearing officer's failure to issue his requested subpoenas. In his first assignment of error, Reid contends that the trial court erred in affirming the Commission because in light of the hearing officer's failure to issue the requested subpoenas, the hearing before the Commission was not a "fair hearing" as required by R.C. 4141.281(1) and (2). In his second assignment of error, Reid contends that the trial court erred in affirming the Commission's decision because since the hearing officer did not issue the requested subpoenas, the hearing before the Commission violated his procedural due process rights under the Ohio and United States Constitutions. In his fourth assignment of error, Reid contends that because the hearing before the Commission violated his due process rights, the hearing was a "legal nullity," which the trial court erred in affirming. Finally, in his fifth assignment of error, Reid contends that the trial court erred in affirming the Commission because, due to the hearing officer's failure to issue the requested subpoenas, the Commission did not conduct a "fair hearing" and therefore, it lacked subject matter to determine his entitlement to unemployment compensation. We address these assignments of error together because they are related.

{¶25} First, we note that Reid's insistence that the hearing officer failed to issue "any" of his requested subpoenas is not an accurate statement of what happened in this case. The certified record demonstrates that although the hearing officer did not issue all

of Reid's subpoenas, on September 10, 2014, the hearing officer issued a subpoena, at Reid's request, ordering MetroHealth to provide "[a]ll documents that relate or pertain to claimant and/or that contain information about claimant including job performance, corrective action and/or discipline and claimant's record of employment with MetroHealth." At the hearing before the common pleas court on Reid's appeal from the Commission's decision, counsel for Reid acknowledged that this subpoena was indeed a "version" of one of his requested subpoenas.

**{¶26}** In response to the hearing officer's subpoena, on October 21, 2014, prior to the second hearing, MetroHealth produced 170 pages of documents. The record reflects that Reid's counsel referred to these documents at the October 28, 2014, hearing and, in fact, questioned Huggins about their contents. Thus, Reid's assertion that the hearing officer denied his request for "any" of the evidence he wanted subpoenaed is simply not true.

**{¶27}** In order to successfully appeal a judgment on procedural due process grounds, Reid must show that he was prejudiced by the allegedly inadequate process, unless the procedure employed involves such a probability that prejudice will result that it is deemed inherently lacking in due process. *Bulatko v. Dir., Ohio Dept. of Job & Family Servs.*, 7th Dist. Mahoning No. 07 MA 124, 2008-Ohio-1061, ¶ 9, citing *Estes v. Texas*, 381 U.S. 532, 541-543, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). In this case, Reid cannot demonstrate that the procedure was inadequate or that he was prejudiced by any alleged deficiency.

{¶28} Hearing officers are not bound by common law or statutory rules of evidence or by formal rules of procedure. R.C. 4141.281(C)(2). The hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general. *Bulatko* at ¶ 11; *Hord v. Dir., Ohio Dept. of Job & Family Servs.*, 7th Dist. Jefferson No. 05 JE 48, 2006-Ohio-4382, ¶ 25. Importantly, hearing officers have the exclusive authority to exclude irrelevant or cumulative evidence, and have broad discretion with respect to the admission of evidence and the number of witnesses that may be needed to testify at the Commission's hearings under R.C. 4141.281. *Metzenbaum v. Unemp. Comp. Bd. of Rev.*, 8th Dist. Cuyahoga No. 72233, 1997 Ohio App. LEXIS 4012, *7, citing *Nordonia Hills Bd. of Edn. v. Unempl. Comp. Bd. of Rev.*, 11 Ohio App.3d 189, 463 N.E.2d 1276 (9th Dist.1983). In this case, the hearing officer exercised his discretion to issue a broad subpoena relevant to the issue to be determined at the hearing (whether Reid was discharged for just cause from his employment and therefore ineligible for unemployment benefits) and to deny the issuance of subpoenas for the cumulative and irrelevant evidence requested by Reid in his seven-page, single-spaced request.

{¶29} The key factor in deciding whether the hearing satisfied procedural due process is whether the claimant had the opportunity to present the facts that demonstrate he was entitled to unemployment benefits. *Atkins v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 08AP-182, 2008-Ohio-4109, ¶ 17; *Bulatko* at ¶ 12. Here, the record reflects that the hearing officer issued a broad subpoena relevant to determining whether Reid was discharged for just cause from his employment. The

record also reflects that Reid had access to and utilized the 170 pages of documents produced by MetroHealth in response to the hearing officer's subpoena. The record further reflects that Reid, represented by counsel, had the opportunity to testify at the hearing and to cross-examine the witnesses produced by MetroHealth. Accordingly, there was no denial of Reid's procedural rights, and no evidence that he was prejudiced by any alleged deficiencies in the process.

{¶30} The gist of Reid's arguments on appeal is that the subpoenaed evidence was necessary to demonstrate that he was wrongfully discharged under pretext and in retaliation for his discovery of alleged fraud on the MEDTAPP audit. He also contends the subpoenaed evidence was necessary to demonstrate that other employees committed similar infractions but did not face similar discipline. But unemployment compensation proceedings determining whether an employee was terminated for just cause under R.C. 4141.29(D) are not the appropriate forum for resolving such wrongful discharge claims. *See Youghiogheny & Ohio Coal Co. v. Oszust*, 23 Ohio St.3d 39, 491 N.E.2d 298 (1986); *Wilson v. Matlack*, 141 Ohio App.3d 95, 750 N.E.2d 170 (4th Dist.2000). This is because "[j]ust cause under the Unemployment Compensation Act is not the same as just cause under other contexts; it is predicated upon employee fault." *Hord* at ¶ 26. Thus, the motivation for the decision to discharge is irrelevant. *Id*., citing *Durgan*, 110 Ohio App.3d at 549, 674 N.E.2d 1208.

{¶31} Reid's subpoena requests for evidence to show that MetroHealth had a motive to falsely allege that his work was incompetent to conceal financial improprieties,

and for evidence to impugn the credibility of the coworkers who complained about him, are nothing more than an improper attempt to convert his unemployment compensation claim to a wrongful discharge claim. As the hearing officer told Reid's counsel,

> I'm not looking at motives. I'm looking at whether he did what they said and if he did do it, would that deny him his benefits. I'm not looking at motives * * *, and we are not the forum for that. If you want to go for wrongful discharge, you have to go to another forum. File a civil rights complaint; you have to go to another forum.

**{¶32}** Furthermore, Reid's claim that other employees committed similar infractions but did not face similar discipline is not relevant to whether he was discharged for just cause under R.C. 4141.29(D). "An employee cannot be excused for his bad conduct for the purposes of unemployment compensation simply because other employees engage[d] in the same conduct." *Hord*, 7th Dist. Jefferson No. 05 JE 48, 2006-Ohio-4382, at ¶ 27.

**{¶33}** The record demonstrates that Reid was given a fair hearing, and that the hearing officer properly exercised his broad discretion under R.C. 4141.281 regarding the requested subpoenas. Accordingly, there was no denial of Reid's due process rights. The first, second, fourth, and fifth assignments of error are therefore overruled.

## C. Manifest Weight of the Evidence

**{¶34}** In his third assignment of error, Reid contends that the trial court erred in affirming the Commission's decision because the hearing officer's findings of fact were against the manifest weight of the evidence.

**{¶35}** To be eligible for unemployment compensation benefits in Ohio, claimants must satisfy the criteria in R.C. 4141.29(D)(2)(a), which provides that no individual may be paid benefits if the individual has been discharged for just cause in connection with the individual's work. The claimant has the burden of proving his entitlement to unemployment compensation benefits under R.C. 4141.29(D)(2)(a). *Heller v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 92965, 2010-Ohio-517, ¶ 35, citing *Irvine*, 19 Ohio St.3d at 17, 482 N.E.2d 587.

**{¶36}** Just cause, in the statutory sense, has been defined as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine* at 17. In order to have just cause for discharge, there must be some fault on the part of the employee. *Heller* at ¶ 36. Such fault does not require misconduct, but fault must be a factor in the justification for the discharge. *Id.* Whether just cause exists is unique to the facts of each case. *Irvine* at 18. The Commission's decision will be affirmed if some competent, credible evidence supports the claim that the employee was terminated through his own fault. *Heller* at ¶ 37.

**{¶37}** Reid argues that the Commission's decision was not supported by the manifest weight of the evidence because the hearing officer gave too much weight to Huggins's testimony that Reid was not able to perform the work of a senior internal auditor. Reid contends that Huggins's testimony at the hearing about his deficiencies was contradicted by his written 45- and 90-day evaluations, in which Huggins noted that Reid's performance was satisfactory. Reid contends that Huggins was therefore a "liar"

— either in his evaluations or in his testimony at the hearing — and therefore, his own testimony was more credible. Accordingly, Reid contends that the hearing officer's decision was against the manifest weight of the evidence because, in finding for MetroHealth, the hearing officer must have necessarily determined that Huggins was more credible than he.

{¶38} We agree that in determining whether MetroHealth terminated Reid for just cause, the hearing officer apparently found Huggins and Tedosio more credible than Reid. Nevertheless, it is not our duty nor our role to make credibility determinations when reviewing a decision from the Commission. In making a just cause determination, "the duty of the fact-finder is to weigh and consider the reliability of the evidence and the credibility of the witnesses." *Fisher v. Bill Lake Buick*, 8th Dist. Cuyahoga No. 86338, 2006-Ohio-457, ¶ 20. In our limited role as a reviewing court, this court may not "make factual findings or determine the credibility of witnesses." *Hansman v. Dir., Ohio Dept. of Job & Family Servs.*, 12th Dist. Butler No. CA2003-09-224, 2004-Ohio-505, ¶ 5, citing *Tzangas*, 73 Ohio St.3d at 696, 653 N.E.2d 1207. "As a result, we may not 'second-guess credibility determinations when reviewing a decision from the Unemployment Compensation Review Commission.'" *Hartless v. Dir., Ohio Dept. of Job & Family Servs.,* 4th Dist. Pickaway No. 10CA27, 2011-Ohio-1374, ¶ 18, quoting *Brown v. Sysco Food Servs. of Cincinnati, L.L.C.*, 4th Dist. Scioto Nos. 90CA3275 and 09CA3276, 2009-Ohio-5536, ¶ 22. "Instead, we must uphold the Commission's decision

so long as it is not unlawful or unreasonable and some competent, credible evidence supports it." *Brown* at ¶ 22.

**{¶39}** The Commission's decision that Reid was terminated for just cause is supported by competent, credible evidence in the record. The evidence demonstrated that Reid understood the duties he was to perform in his position and the expectations of his employer. Even in his first 90 days of employment, however, there were issues with his performance and conduct toward other MetroHealth employees. These issues were discussed with Reid, and he was aware of them. When his performance did not improve, he was placed on a performance improvement plan. Although he met weekly with his supervisor, who tried to counsel him, his performance still did not improve. He was then discharged because he was not meeting the obligations and requirements of the position. In short, he was discharged for just cause. The third assignment of error is therefore overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION

ANITA LASTER MAYS, J., DISSENTING:

{¶41} I respectfully dissent. I would find a violation of appellant Robert Reid's ("Reid") due process rights and reverse the findings of the Commission and remand the matter for another hearing.

{¶42} The majority concludes that MetroHealths' production of 170 pages of documents was adequate and did not violate Reid's due process. The record supports that Reid requested information to support his claim. The record demonstrates that the hearing officer did not issue all of Reid's subpoenas but ordered MHS to "provide"[a]ll documents that relate or pertain to claimant and/or that contain information about claimant including job performance, corrective action and/or discipline and claimant's record of employment with MHS."

{¶43} I would conclude that the hearing officer's determination to deny Reid's request for all of the evidence subpoenaed for his defense, and rely on the evidence selectively provided by MetroHealth, resulted in the denial of a fair hearing.

{¶44} The parties do not dispute that, pursuant to R.C. 4141.281(C)(1)(2) and Ohio Adm.Code 4146-7-02, the hearing officer has broad discretion over the conduct of the Commission administrative hearing. The parties are entitled to subpoena documents and witnesses. Ohio Adm.Code 4146-15-01. However, Ohio has also statutorily

prescribed that hearings must be fair and the principles of due process must be followed. R.C. 4141.281(C)(2). "Our focus when reviewing an unemployment compensation appeal is upon the commission's, rather than the trial court's, decision." *Sinclair v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 101747, 2015-Ohio-1645, ¶ 6, citing *Ricks v. Dir., Ohio Dept. of Job & Family Serv.*, 8th Dist. Cuyahoga No. 99451, 2013-Ohio-3253, ¶ 11.

{¶45} The court stated in *Hertelendy v. Great Lakes Architectural Serv. Sys., Inc*, 2012-Ohio-4157, 976 N.E.2d 950 (8th Dist.). The following:

> The principles of due process in administrative hearings apply to all hearings conducted under the authority of the commission. R.C. 4141.281(C)(2). The key factor in deciding whether a hearing satisfies procedural due process is whether the claimant had the opportunity to present the facts that demonstrate he was entitled to unemployment benefits. *Howard* [*v. Elec. Classroom of Tomorrow*, 10th Dist. Franklin No. 11AP-159, 2011-Ohio-6059,] ¶ 15, citing *Atkins v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 08AP-182, 2008-Ohio-4109, ¶ 17. This is because "'[t]he object of the hearing is to ascertain the facts that may or may not entitle the claimant to unemployment benefits.'" *Id.*, quoting *Bulatko v. Ohio Dept. of Job & Family Servs.*, 7th Dist. Mahoning No. 07 MA 124, 2008-Ohio-1061, ¶ 11.
>
> While R.C. 4141.281(C)(2) requires that commission hearings satisfy due process principles, it also provides that "[i]n conducting hearings, all hearing officers shall control the conduct of the hearing, exclude irrelevant and cumulative evidence, and give weight to the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of serious affairs." Thus, "'[t]he hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general.'" *Howard* at ¶ 16, quoting *Bulatko* at ¶ 11. "The hearing officer's discretion is tempered only to the extent that he must afford each party an opportunity to present evidence that provides insight into the very subject of the dispute." *Howard* at ¶ 16, citing *Owens v. Admr. Ohio Bur. of Emp. Servs.*, 135 Ohio App.3d 217, 220, 733 N.E.2d 628 (1st Dist.1999).

*Hertelendy* at ¶ 18-19.

**{¶46}** I would find that the denial of all of Reid's subpoenaed documents denied Reid the opportunity to fully present the facts that demonstrated he was entitled to unemployment benefits and to provide insight into the very subject of the dispute. The hearing officer's discretion is tempered only to the extent that he must afford each party an opportunity to present evidence that provides insight into the very subject of the dispute. However, a hearing officer's failure to allow a party to present witnesses or otherwise develop their case is grounds for reversing the decision of the review commission. *Bulatko v. Dir., Ohio Dept. of Job & Family Servs.,* 7th Dist. Mahoning No. 07 MA 124, 2008-Ohio-1061, ¶ 11, citing *Owens v. Admr., Ohio Bur. of Emp. Servs.*, 135 Ohio App.3d 217, 733 N.E.2d 628 (1999).

**{¶47}** "The key factor in deciding whether a hearing satisfies procedural due process is whether the claimant had the opportunity to present the facts that demonstrate he was entitled to unemployment benefits." *Hertelendy* at ¶ 18. I would find that the Commission's denial of Reid's subpoenas in their entirety constituted a violation of Reid's due process rights in violation of R.C. 4141.281(C)(2) and Ohio Adm.Code 4146-7-02. I would conclude that the hearing officer abused its discretion by denying Reid the opportunity to fully secure evidence and fully present testimony that would "ascertain the facts that may or may not entitled him" to unemployment compensation benefits. *Hertelendy* at ¶ 27**.**